# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL GARCIA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3850 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, seeks habeas relief under 28 U.S.C. § 2254 challenging his felony conviction.  Respondent filed a motion for summary judgment (Docket Entry No. 16), to which petitioner filed a response (Docket Entry No. 17).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of aggravated robbery in Harris County, Texas, and sentenced to twenty years imprisonment.  The conviction was affirmed on appeal.  *Garcia v. State*, No. 01-08-00247-CR (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd).  The Texas Court of Criminal Appeals refused discretionary review, and denied petitioner's application for state habeas relief on August 10, 2011.  *Ex parte Garcia*, WR-76,165-02.

Petitioner filed the instant section 2254 habeas petition on October 26, 2011, raising the following grounds for relief:

1.  The evidence is insufficient to prove that he robbed Patricia Serrano.

2.  The trial court erred and denied petitioner his rights to confrontation, due process, and a fair trial by allowing into evidence hearsay statements of his non-testifying co-defendant.

3.  Trial counsel was ineffective in failing to:

    (a)  obtain medical records prior to trial;

    (b)  seek out and interview potential witnesses;

    (c)  suppress hearsay statements contained in a videotape; and

    (d)  effectively emphasize inconsistent testimony.

4.  The State committed prosecutorial misconduct by:

    (a)  presenting inconsistent testimony;

    (b)  failing to correct inconsistent testimony; and

    (c)  failing to correct inconsistencies among the medical records and official reports.

Respondent argues that these claims are without merit and should be dismissed.

### *Factual Background*

The intermediate state appellate court set forth the following statement of facts in its opinion:

> Shortly after midnight on December 10, 2006, the complainants, Alberto Martinez and Patricia Serrano, were at the Tequila Sunrise Bar and had

2

stepped outside so that Patricia could remove her painful shoes.  Patricia sat down on the passenger seat of Alberto's truck, which was parked near the front door of the club, and Alberto stood in the open passenger-side doorway, helping Patricia.

Patricia testified that she heard a car stop quickly on the gravel nearby, but she did not look up.  Moments later, two Hispanic men appeared behind Alberto, one holding a firearm and one holding a knife.  Patricia noticed that one of the men was clearly older than the other, but she could not remember which one held the gun and which held the knife.  The gun was black in color.  Patricia testified that 'they' said, in Spanish, to 'give them the wallet, give them the money.'  Patricia also testified that she heard, 'Give me your wallet, give me your money, whatever you have.'

Patricia testified that she saw 'them' take Alberto's wallet and that they took his truck keys.  One of the men 'pulled Alberto from the truck and pulled him' to the ground and 'struck' Alberto. The other man held the gun in Patricia's face.  Patricia testified that she was afraid for her life.  She then saw a police officer drive into the parking lot, and the two men ran away in different directions.

Officer C. M. Holloway of the Houston Police Department ('HPD') was on patrol in the area at the time of the incident.  As he was driving by the club with his window down, he heard an argument occurring in the parking lot.  As he drove into the parking lot, he saw two men beating another man, and a woman standing nearby, looking down on what was happening.  Officer Holloway testified that the men were Hispanic and that one was clearly older than the other.  Officer Holloway radioed for backup, giving a description of the tattoos and clothing he saw on the older man.  He then turned on his overhead lights, and the two men ran away in different directions.  Officer Holloway chased and caught the younger man, who was later identified as Cipriano Roman.  Officer Holloway placed him in custody and put him in the back seat of the police car.

Moments later, the older Hispanic man, later identified as appellant, appeared.  He approached Officer Holloway and told him that he had just been 'chasing the bad guys' down the street.  Appellant was breathing hard, nervous, and sweating profusely.  Appellant said that 'two black' men had robbed a couple in the parking lot and that he had chased after them.  Officer Holloway

3

recognized appellant as the second man he had seen beating up Alberto. Appellant pointed as he spoke, and Officer Holloway noticed that appellant's knuckles were bloody, like he had been in a fight.  Officer Holloway took appellant into custody.

Another HPD officer, also named C. M. Holloway, arrived at the scene to assist.  Officer Holloway searched the area in which Roman was apprehended and recovered a loaded firearm.  At trial, Officer Holloway identified the weapon as a .45-caliber Colt 911.

HPD Investigator L. Lovelace interviewed Roman.  Investigator Lovelace testified that Roman said that, on the night of the incident, he and appellant, who is his uncle, had been driving around and passed by the club.  They saw two people standing outside, and appellant said, 'Hey, what do you think, C.J., let's go get them.'  They drove into the parking lot, and appellant got out of the car with a knife and approached the people.  Roman said that appellant began struggling with the man, so Roman got out.  Roman heard appellant tell 'them' to give him money.  Roman said that he grabbed a pistol from the car, but the police came and he ran away.  Roman said that the gun belonged to appellant.

Investigator Lovelace conducted a videotaped interview of appellant, which was admitted at trial.  During the interview, appellant said that, on the night of the incident, he and his nephew, whom he calls 'C.J.,' were driving around and decided to go to the club.  The two men were in appellant's wife's car. Appellant drove into the parking lot and spoke with a security guard, who told them they would have to park across the street.  Appellant saw a couple, Alberto and Patricia, at a truck parked by the front door.  Appellant asked them if they were about to leave, and the man got angry.  Roman got out and got into a fight with the man, so appellant grabbed the gun and tried to knock the man down.

Alberto was transported by emergency medical personnel to Memorial Hermann Hospital.  His medical records were admitted into evidence.  The records reflect that Alberto was presented at the hospital as having been 'hit in head and face multiple times with butt of gun' and that he had lost consciousness. Alberto was treated for 'scalp and facial contusions/abrasions' and released later that day.

4

The jury was instructed that it could find appellant guilty either as the primary actor or as a party.  The jury convicted appellant, in cause number 1121982, of the aggravated robbery of Alberto and, in cause number 1157987, of the aggravated robbery of Patricia.

*Garcia*, *1–3.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Courts' precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state courts' application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id*. at 411.

The AEDPA affords deference to a state courts' resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *Miller-El*, 537 U.S. at 330–31; 28 U.S.C. § 2254(e)(1).

A state courts' determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state courts' decision. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785 (2011).  As stated by the Supreme Court in *Richter*, "It bears repeating that even a strong case for relief does not mean the state courts' contrary conclusion was unreasonable." *Id*. at 786.  That is,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state courts' decision conflicts with this Courts' precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.* (internal citations omitted).

### Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software*, *Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). While summary judgment rules apply with equal force in a section 2254 proceeding, the rule only applies to the extent that it does not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state courts' findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state courts' factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

7

### *Insufficiency of the Evidence*

Petitioner contends that the evidence is insufficient to establish that he robbed complaint Patricia Serrano.  Specifically, he argues that the State presented no evidence that he attempted to take property belonging to Serrano, and that Serrano herself testified that neither of the attackers demanded anything from her.  Petitioner posits that he was indicted for the robbery of Serrano only because the other complainant, Alberto Martinez, was unavailable for trial.[1]

Sufficiency of the evidence on federal habeas review of a state conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *Jackson* requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict.  *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

The record reflects that petitioner raised a similar challenge to the sufficiency of the evidence on direct appeal. As described above, the intermediary court of appeals rejected

---

[1]Petitioner does not here challenge his conviction and sentence for the aggravated robbery of Alberto Martinez.

petitioner's arguments on appeal and found that there was sufficient evidence to support the

conviction:

> A person commits the offense of robbery if, in the course of committing theft
> and with the intent to obtain or maintain control of the property, he (1)
> intentionally, knowingly, or recklessly causes bodily injury to another or (2)
> intentionally or knowingly threatens or places another in fear of imminent
> bodily injury or death.  A robbery is aggravated if, *inter alia*, the person uses
> or exhibits a deadly weapon.  A firearm is, *per se*, a deadly weapon.

> A person is criminally responsible as a party to an offense if the offense is
> committed by his conduct, by the conduct of another for which he is criminally
> responsible, or by both.  A person is criminally responsible for an offense
> committed by the conduct of another if, acting with intent to promote or assist
> the commission of the offense, he solicits, encourages, directs, aids, or
> attempts to aid the other person to commit the offense.  In determining whether
> the accused acted as a party, we may consider events occurring before, during,
> and after the commission of the offense and may rely on actions of the
> defendant that show an understanding and a common design to commit the
> prohibited act.  Circumstantial evidence may be sufficient to establish a
> defendant's guilt as a party to an offense.

> The State presented evidence that appellant committed an aggravated robbery
> of Patricia.

> The State presented appellant's videotaped interview, during which he said
> that he and Roman were at the club at the time of the incident, that they
> approached Alberto and Patricia, and that there was a confrontation.  The State
> also presented the testimony of Investigator Lovelace, who said that Roman
> told him that he and appellant were driving around and passed by the club.
> They saw two people standing outside and appellant said, 'Hey, what do you
> think, C.J., let's go get them.'

> Patricia testified that two Hispanic men, later identified as appellant and
> Roman, approached her and Alberto.  One of the men was holding a firearm
> and one was holding a knife.  Patricia testified that 'they' said, in Spanish, to
> 'give them the wallet, give them the money.'  Patricia also testified that one of
> them said, 'Give me your wallet, give me your money, whatever you have.'

Patricia saw 'them' take Alberto's wallet and reported that 'they' took his truck keys.  Investigator Lovelace also testified that Roman said that he heard appellant tell 'them' to give him money.  From this evidence, the jury could have reasonably concluded that appellant was in the course of committing theft and that he acted with the intent to obtain or maintain control of Patricia's and Alberto's property.

Patricia also testified that one of the men 'pulled Alberto from the truck and pulled him down' to the ground and struck Alberto, while the other man held a gun to Patricia's face.  Patricia testified that she feared imminent injury or death.  Through his videotaped interview, appellant admitted that he grabbed a gun and tried to knock Alberto down.  From this evidence, the jury could have reasonably concluded that appellant intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death and appellant used or exhibited a deadly weapon.

Officer Holloway's testimony supported that of Patricia.  Officer Holloway testified that, as he drove into the parking lot of the club, he saw two men, later identified as appellant and Roman, beating another man, later identified as Alberto, and saw a woman, later identified as Patricia, standing nearby. Officer Holloway turned on his overhead lights, and the two men ran away in different directions.  Officer Holloway chased and caught Roman.  Moments later, appellant appeared and Officer Holloway recognized him from his tattoos and clothing as the second man he had seen beating up Alberto. Appellant was breathing hard, nervous, and sweating profusely, and Officer Holloway noticed that appellant's knuckles were bloody, like he had been in a fight.  A subsequent search of the area yielded a loaded firearm in close proximity to where Roman had been apprehended.

Considering all the evidence in a light that supports the verdict, the jury could have reasonably concluded that appellant committed an aggravated robbery of Patricia and that he used or exhibited a deadly weapon, namely, a firearm. Further, the jury was authorized to convict appellant as the primary actor or as a party.  We hold that the evidence is legally sufficient to support appellant's conviction in cause number 1157987.

Appellant contends that '[t]he evidence supports a conviction for aggravated assault with a deadly weapon against Patricia Serrano, but it is legally insufficient to support a conviction for aggravated robbery' because '[t]he only

demand was for property belonging to another person, Alberto Martinez' and that '[n]o one demanded or tried to obtain any property belonging to Patricia Serrano.'

The evidence shows the contrary.  Patricia testified that appellant and Roman approached her and Alberto, that one held a gun and the other held a knife, and that 'they' said, 'Give me you wallet, give me your money, whatever you have.'  From this evidence, the jury could have reasonably concluded that appellant demanded property from [sic] both Patricia and Alberto.  Moreover, a specific verbal demand from Patricia alone was not required.  Further, although Patricia testified that nothing was stolen directly from her, a completed theft is not required to support a conviction for aggravated robbery.

*Garcia*, at *9–13 (citations omitted).

The Court has reviewed petitioner's insufficiency claim and finds it without merit.

Under the *Jackson* standard for review, the jury may disregard any evidence it chooses to

disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id.*

Further, any contradictory testimony does not affect the validity of the guilty verdict.  *Id.*  The

evidence can be sufficient to support a conviction under *Jackson* even when it also supports

a claim of innocence.  *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state court of appeals in its opinion is itself enough to

allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury

charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge

in a Texas appellate court.  This Courts' independent review of the trial record also reveals

sufficient evidence under *Jackson* to sustain the jury's verdict.  Petitioner fails to meet his

burden of proof under the AEDPA standards of review, and respondent is entitled to summary judgment dismissing petitioner's challenge to the sufficiency of the evidence.

### *Trial Court Error*

The trial court overruled petitioner's objections and allowed into evidence petitioner's videotaped interrogation taken by Detective Lovelace. Lovelace also testified to statements made by petitioner's co-defendant during Lovelace's interview of the co-defendant. Petitioner claims that the trial courts' rulings were in error and denied him due process, confrontation, and a fair trial because the videotape and Lovelace's testimony contained incriminating hearsay statements made by petitioner's non-testifying co-defendant, Roman.

On direct appeal, petitioner raised claims for evidentiary error but not constitutional error. In rejecting petitioner's claims for evidentiary trial court error, the intermediary state court of appeals found as follows:

> In his first point of error, appellant complains that the videotape 'recorded interview of appellant includes statements by Cipriano Roman which incriminated appellant' and constituted inadmissible hearsay. In his second point of error, appellant contends that Officer Lovelace's testimony from his own recollection of his interview of Roman constituted inadmissible hearsay.

> Prior to trial, appellant sought to suppress any 'Statements of the Defendant to any law officer.' At a hearing on the motion, the videotaped interview of appellant was played. In the interview, Officer Lovelace told appellant that Roman had said that the gun belonged to appellant, that it was in appellant's car, and that appellant had a knife. Appellant objected as follows, 'As to the hearsay statements contained with[in] the tape, Your Honor, in dealing with what the co-defendant told this officer. I would object to those statements coming in.' The State argued that the statements constituted admissions by a party opponent. The trial court ruled that the statements were admissible.

12

Later, at trial, in conjunction with the videotape being published to the jury, appellant again objected, on the basis of hearsay, to the admission of Roman's statements incriminating appellant that came in through the videotaped interview of appellant.  The objection was overruled.

A statement is not hearsay if it constitutes an admission by a party opponent, that is, stated generally, if it is offered against a party and is the party's own statement, a statement of which the party has manifested an adoption of its truth, a statement by a person authorized by the party to make a statement concerning the subject, a statement by the party's agent, or a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.  Here, the statements by Investigator Lovelace to appellant, made during the videotaped interview, indicating that Roman had implicated appellant as having owned the gun, having carried it in his car, and having held a knife during the confrontation at issue, do not fall under any of the provisions of Rule 801(e)(2).  The statements are not admissions by a party opponent.  Hence, the trial court abused its discretion by admitting those portions of the videotape.

Having determined that error occurred, the next step is to assess whether harm resulted.  Here, the same facts at issue were later placed before the jury through Investigator Lovelace's testimony concerning his own recollection of his interview with Roman.  Investigator Lovelace testified that Roman said that appellant suggested that they rob Alberto and Patricia; that appellant got out of the car with a knife and approached them; that appellant asked Alberto for money; and that the pistol belonged to appellant.  The record does not reflect that appellant objected to this testimony.

Hence, appellant was not harmed by the erroneous admission of hearsay through the videotaped interview, because the same evidence came in during subsequent testimony by Investigator Lovelace.

Further, because appellant failed to object during Officer Lovelace's testimony concerning his own recollection of the interview, appellant's second point of error, which concerns that testimony, was not preserved for our review.

*Garcia*, at *17–20 (citations omitted).

13

In his application for state habeas relief, petitioner challenged admission of the hearsay statements as an abuse of discretion and as a denial of his federal constitutional rights to due process, confrontation, and a fair trial.  In denying relief on these claims, the state court on collateral review found as follows:

1.    It is well settled that a habeas proceeding should not be used to litigate issues that should have been raised on direct appeal.

2.    The purpose of habeas corpus is to determine the lawfulness of confinement and not to serve as the substitute for an appeal.  The applicant's allegations of trial court error, prosecutorial misconduct, and [in]sufficiency of the evidence are all considered 'record claims' that should have been brought up on appeal.

3.    Issues raised and rejected on direct appeal need not be considered in habeas.  The First Court of Appeals already ruled [on] the applicant's grounds of trial court error and [in]sufficiency of the evidence.

*Ex parte Garcia*, pp. 81–82 (citations omitted).

Thus, the state court on direct appeal found that the admission of the hearsay statements through the videotaped interrogation was error, but held it harmless error because Lovelace later testified to the same hearsay statements without objection by petitioner.  The trial court on collateral review then declined to reconsider petitioner's claims of trial court error or to consider petitioner's constitutional challenges to the trial courts' rulings, because the claims were matters for determination on direct appeal, not collateral review.

The admission of inadmissible evidence for purposes of federal habeas relief are governed by *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  In *Brecht*, the Supreme Court

addressed the issue of harmless error in the context of federal habeas review and determined that habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.  507 U.S. at 637.  Actual prejudice involves a determination of whether the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Id*.  In making that determination, the federal habeas court must review the entire record "so as to fully consider all the ways in which the complained-of error could have infected the course of the . . . trial."  *Cupit v. Whitley*, 28 F.3d 532, 538 (5th Cir. 1994).

In applying the *Brecht* standard to the instant claim of evidentiary error, the Court finds that petitioner fails to show actual prejudice.  As noted by the intermediary state appellate court and as shown by the record, Lovelace testified at a later point in trial, without objection by petitioner, to the same hearsay statements introduced to the jury through its viewing of the videotaped interrogation.  In absence of a timely and proper objection, any error was waived.  Further, for purposes of federal collateral review, the Texas contemporaneous objection rule constitutes an adequate and independent state procedural bar such that petitioner's claim has been procedurally defaulted.  *See Hogue v. Johnson*, 131 F.3d 466, 487 (5th Cir. 1997).  Accordingly, petitioner's failures to object to the evidence as violations of his rights to due process, confrontation, and a fair trial stand as procedurally barred under the Texas contemporaneous objection rule.  Petitioner neither argues nor shows cause and prejudice for the procedural default.  *See Coleman v. Thompson*, 501 U.S. 722, 750

(1991). Habeas relied is unwarranted, and respondent is entitled to summary judgment dismissal of the claims.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner asserts that trial counsel was ineffective in the following instances, each of which will be separately addressed.

<u>Failure to obtain medical records</u>

Petitioner complains that trial counsel failed to obtain copies of Alberto Martinez's medical records prior to trial. Petitioner concedes, and the record shows, that the medical records were introduced by the State and admitted into evidence. Petitioner contends, however, that had counsel reviewed the records prior to trial, he would have found that Martinez was injured with the butt of a gun, although Patricia Serrano did not testify that Martinez was struck with a gun. Petitioner argues that trial counsel should have raised this inconsistency at trial.

In denying petitioner's claims for ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

    10.    The applicant fails to show that the conduct of counsel fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

                        *    *    *    *

    20.    The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel.

*Ex parte Garcia*, pp. 83–85 (citations omitted).

Even assuming counsel were deficient in not obtaining the records prior to trial, petitioner fails to establish prejudice under *Strickland*. The record shows that, after trial counsel objected to not having seen the medical records prior to trial, the trial court recessed until the next afternoon to allow counsel time to review the records. R.R. Vol. 3, pp. 141–142. Further, inconsistencies regarding complainant Patricia Serrano's testimony were brought out at trial, including her testimony that the gun was held on her although the medical records stated that Martinez had been struck with the gun. It was within the sole providence of the jury to resolve the conflicts and inconsistencies in the evidence. Petitioner does not establish that, but for counsel's failure to obtain and review the medical records prior to trial, there is a reasonable probability that the result of the trial would have been different.

18

The state courts denied relief on this claim.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

Failure to interview and obtain witnesses

Petitioner complains further that trial counsel was ineffective in failing to interview the following witnesses or read their relevant reports prior to trial:  the officials who wrote the medical and fire department reports regarding Martinez's injuries; the bar's parking lot attendant; complainant Patricia Serrano; and the officer who translated the conversation between Serrano and the investigating officer.  Petitioner posits that, had counsel interviewed these individuals prior to trial, he would have discovered inconsistencies in the evidence.

In denying petitioner's claims for ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

10. The applicant fails to show that the conduct of counsel fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

11. The presentation of the defense case is essentially strategy and thus within the trial counsel's domain.

12. The applicant does not specify any facts trial counsel neglected, and fails to show what a more in depth investigation would have revealed.

13. Even if that [sic] defense counsel limited his investigation, an attorney's decision may be reasonable under the circumstances.

19

\*   \*   \*   \*

15.   The court will not 'second-guess through hindsight' the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

16.   The applicant fails to list the names of the alleged witnesses that counsel allegedly failed to interview, and the applicant fails to meet his burden of showing not only that they were available, but how their testimony would have benefited the applicant.

\*   \*   \*   \*

19.   The court will not use hindsight to second guess tactical decisions made by trial counsel.

20.   The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel.

*Ex parte Garcia*, pp. 83–85 (citations omitted).

Petitioner fails to meet his burden of proving deficient performance and prejudice under *Strickland*.   The record does not establish, and petitioner presents no probative summary judgment evidence, that trial counsel did not interview any of these individuals or review their reports prior to trial.   Petitioner's conclusory and unsupported allegations of what counsel did or failed to do are insufficient to raise a genuine issue of material fact precluding summary judgment.   Conclusory claims such as these are inadequate to demonstrate deficient performance or prejudice under *Strickland*. *See Day v. Quarterman*, 566 F.3d 527, 540–41 (5th Cir. 2009).

20

The record shows that the evidentiary inconsistencies alleged by petitioner were presented to the jury at trial. In particular, trial counsel extensively cross-examined Patricia Serrano, and used her police statement and report to bring forward the inconsistencies and conflicts in her testimony. R.R. Vol. 3, pp. 51–59. Nor does petitioner set forth probative summary evidence in support of his claim. As stated by the Fifth Circuit Court of Appeals,

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Petitioner has produced no probative evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense, and he fails to prove his claim.

The state courts denied relief on this claim. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

Failure to suppress hearsay statements

Petitioner next complains that trial counsel failed to suppress petitioner's videotaped interview which contained hearsay statements made by the investigating officer. Petitioner asserts that, in the videotaped interview, investigator Lovelace told petitioner that complainant Patricia Serrano had reported that one of the robbers had held a knife to her throat. Petitioner argues that this was inadmissible hearsay. He further argues that the complainant's alleged statement was false because Serrano testified at trial that a gun had been pointed at her during the robbery, and had not stated that a knife had been held to her throat.

In denying petitioner's claims for ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

10. The applicant fails to show that the conduct of counsel fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

11. The presentation of the defense case is essentially strategy and thus within the trial counsel's domain.

\*   \*   \*   \*

14. Isolated failure to object to improper evidence generally does not in itself constitute ineffective assistance.

22

15.   The court will not 'second-guess through hindsight' the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

\*   \*   \*   \*

17.   In order to show that a failure to object fell below the minimum standard of competence, the applicant must show that the trial court would have committed error in overruling the objection if it were made.

18.   The applicant is obliged to prove that a motion to suppress would have been granted in order to satisfy *Strickland*.  The applicant did not make this showing.

19.   The court will not use hindsight to second guess tactical decisions made by trial counsel.

20.   The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel.

*Ex parte Garcia*, pp. 83–85 (citations omitted).

Petitioner fails to rebut the strong presumption that trial counsel's failure to object to the alleged hearsay was not the product of a reasoned trial strategy.  Serrano testified and reported that a gun had been pointed at her; she did not testify that a knife had been held to her throat.  Consequently, it would have been a reasonable trial strategy for defense counsel to forgo objecting to Serrano's purported hearsay statement regarding the knife, in belief that the inconsistencies in her statements would harm her credibility and benefit the defense. Moreover. because Serrano herself did not testify that a knife had been held against her throat during the offense, petitioner fails to show that, but for counsel's failure to object to the alleged hearsay statement, there is a reasonable probability that the result of the trial would

23

have been different. Petitioner establishes neither deficient performance nor prejudice under *Strickland*.

The state courts denied relief on this claim. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

Failure to effectively emphasize inconsistent testimony

Petitioner asserts that trial counsel failed to emphasize the discrepancy between Patricia Serrano's testimony that the robbers were holding weapons, and Officer Holloway's testimony that he saw no weapons being held when he arrived at the scene.

In denying petitioner's claims for ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings:

10. The applicant fails to show that the conduct of counsel fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

                \*    \*    \*    \*

20. The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel.

*Ex parte Garcia*, pp. 83–85 (citations omitted).

It must be noted that petitioner's complaint is not that trial counsel wholly failed to point out the discrepancy, but that counsel did not *effectively* point out the discrepancy. His argument, however, is imprecise and fails to clearly specify how counsel could have been "more effective" in emphasizing the discrepancy. To the contrary, the record reveals that trial counsel repeatedly underscored Holloway's testimony that he saw no weapons:

COUNSEL: Did you see the actions taking place while these three individuals, the male Hispanics, were on the ground?

HOLLOWAY: Yes, sir.

COUNSEL: Okay. What were they doing?

HOLLOWAY: The two males were in an upright position beating on a male that was laying on his back defenseless.

COUNSEL: *Did you see any weapons being exhibited at that time?*

HOLLOWAY: *Not at that time.*

COUNSEL: *Did you see any weapons being exhibited at any time?*

HOLLOWAY: *No, sir.*

COUNSEL: When the two – did you see the Hispanics take off from the scene?

HOLLOWAY: Yes, sir.

COUNSEL: *And do you have any recollection as to whether or not they were carrying weapons?*

HOLLOWAY: *I was unable to see.*

\*   \*   \*   \*

25

COUNSEL:   And your lights were shining on them?

HOLLOWAY:        My headlights were, not my overhead.  Yes, sir.

COUNSEL:   *And you did not see any weapons being exhibit[ed] at that time?*

STATE:        *Objection; asked and answered.*

COURT:        *Sustained.*

COUNSEL:   I'll pass the witness, Your Honor.

R.R. Vol. 3, pp. 91–92 (emphasis added.)   The jury heard the testimony of both Serrano and Holloway, and it was within the jury's purview to weigh the evidence and resolve for itself any conflicts in the testimony.

Even assuming petitioner disclosed a reasonable manner by which counsel could have placed greater emphasis on the discrepancy, petitioner fails to show that, but for counsel's failure, there is a reasonable probability that the result of the trial would have been different. Petitioner demonstrates no prejudice under *Strickland*.

The state courts denied relief on this claim.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Prosecutorial Misconduct*

Petitioner asserts three claims for prosecutorial misconduct regarding the presentation, and failures to correct, perjured, false, or misleading inconsistent testimony and evidence.

26

In denying habeas relief, the state court on collateral review declined to consider petitioner's prosecutorial misconduct:

> 2.      The purpose of habeas corpus is to determine the lawfulness of confinement and not to serve as the substitute for an appeal.  The applicant's allegations of trial court error, prosecutorial misconduct, and [in]sufficiency of the evidence are all considered 'record claims' that should have been brought up on appeal.

*Ex parte Garcia*, p. 81 (citations omitted).  Petitioner did not raise these claims on direct appeal.  Nor did he assert on state collateral review that appellate counsel was ineffective in failing to raise these issues on direct appeal.  In short, petitioner's claims of prosecutorial misconduct are procedurally defaulted at this juncture, and he fails to assert or show cause and prejudice for the default.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Regardless, the record shows that these claims are without merit, as follows.

Use of inconsistent statements

Petitioner claims that the State committed prosecutorial misconducts in presenting the inconsistent evidence of Patricia Serrano's testimony that a gun was pointed at her face, and the purported hearsay statement made by Lovelace in which Serrano was reported to have said that a knife was held to her throat.

"A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected." *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  The due process clause of the Fourteenth Amendment prohibits the State from knowingly using perjured or misleading testimony. *Giglio v. United States*, 405

U.S. 150, 153 (1972).  To establish a *Giglio* claim for the prosecutor's use of perjured or misleading testimony, a petitioner must establish that (1) a State's witness testified falsely or in a misleading manner; (2) the false or misleading testimony was material; and (3) the prosecution knew the testimony was false or misleading.  *Id.*, at 153–54.  The false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony.  Such matters go to the weight of the evidence and credibility of the witness.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that contradictions or inconsistencies in trial testimony are to be resolved by the trier of fact and do not suffice to prove testimony was false).

Petitioner here fails to present probative summary judgment evidence that either Serrano's or Lovelace's trial testimony was false and that the State knew it was false. To the contrary, petitioner shows at most an inconsistency between the testimony of two witnesses; it was for the jury, not the prosecution, to resolve such inconsistency.  Habeas relief is not merited under these facts.

The state courts denied habeas relief.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, federal constitutional or statutory law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

Failure to correct inconsistent testimony

Petitioner again complains of the State's use of the inconsistent testimonies of Serrano and Lovelace; here, he argues that the State should have "corrected" the inconsistency.  As stated above, and under the same analysis, no prosecutorial misconduct or denial of due process has been established.  Petitioner presents no probative summary judgment evidence that Serrano's or Lovelace's trial testimony was false and that the State knew it was false.  Petitioner again shows at most an inconsistency between the testimony of two witnesses, which was for the jury, not the prosecution, to resolve.  Habeas relief is not merited under these facts.

The state courts denied habeas relief.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, federal constitutional or statutory law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

Failure to correct inconsistencies between the medical records and official reports

In similar fashion, petitioner also complains that the State failed to correct inconsistencies between the medical records and two incident reports, in that the documents inconsistently reported that the complainant suffered one contusion and that he was struck multiple times.  Again, assuming these reports are in fact inconsistent with one another, petitioner does not establish that any report was false and that the State knew it was false; he

again fails to show that there was something for the State to "correct." The jury was aware of the reports and of the statements appearing within the reports; any inconsistencies were for the jury to weigh and resolve, not the State. Habeas relief is not merited under these facts.

The state courts denied habeas relief. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, federal constitutional or statutory law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Conclusion

Respondent's motion for summary judgment (Docket Entry No. 16) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on October 31, 2012.

Gray H. Miller
United States District Judge